T.C. Memo. 2007-303

UNITED STATES TAX COURT

WAYNE ALLEN MOOTZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9671-06L.                Filed October 4, 2007.

Wayne Allen Mootz, pro se.

<u>Lisa K. Hunter</u>, for respondent.

MEMORANDUM OPINION

CHIECHI, <u>Judge</u>:  This case is before the Court on respon-
dent's motion for summary judgment (respondent's motion).  We
shall grant respondent's motion.

## Background

The record establishes and/or the parties do not dispute the
following.

Petitioner resided in Dubuque, Iowa (Dubuque), at the time he filed the petition in this case.

On April 2, 2003, petitioner filed a Federal income tax (income tax) return for his taxable year 2001 (2001 income tax return). In his 2001 income tax return, petitioner showed income tax due of $6,036, which he did not pay when he filed that return.

At a time not disclosed by the record, respondent determined that petitioner made a mathematical error in his 2001 income tax return. Respondent corrected that mathematical error, which resulted in a reduction of the income tax due of $6,036 shown in that return. The correct amount of income tax that petitioner should have shown due in that return is $5,736.

On May 12, 2003, respondent assessed the correct amount of income tax due of $5,736 that petitioner should have shown in his 2001 income tax return, additions to tax under section 6651(a)(1)[1] and (2) of $1,290.60 and $372.84, respectively, and interest as provided by law.[2] (We shall refer to any such unpaid assessed amounts with respect to petitioner's taxable year 2001, as well as interest provided by law accrued after May 12, 2003,

_____

[1]All section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Respondent credited respective refunds of $661.06 and $109.45 due to petitioner from certain other taxable years against the liability for petitioner's taxable year 2001.

as petitioner's unpaid 2001 income tax liability.)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 2001 income tax liability.

On April 15, 2003, petitioner filed an income tax return for his taxable year 2002 (2002 income tax return). In his 2002 income tax return, petitioner showed tax due of $244, which he did not pay when he filed that return.

On May 19, 2003, respondent assessed the income tax due of $244 shown in petitioner's 2002 income tax return, an addition to tax under section 6651(a)(2) of $2.44, and interest as provided by law. (We shall refer to any such unpaid assessed amounts with respect to petitioner's taxable year 2002, as well as interest provided by law accrued after May 19, 2003, as petitioner's unpaid 2002 income tax liability.)

Respondent issued to petitioner the notice and demand for payment required by section 6303(a) with respect to petitioner's unpaid 2002 income tax liability.

On October 7, 2004, respondent filed a notice of Federal tax lien with respect to petitioner's unpaid 2001 income tax liability and petitioner's unpaid 2002 income tax liability.

On October 8, 2004, respondent issued to petitioner a notice of Federal tax lien filing and your right to a hearing (notice of tax lien) with respect to petitioner's unpaid 2001 income tax

liability and petitioner's unpaid 2002 income tax liability.

On November 8, 2004, petitioner's authorized representative mailed to respondent Form 12153, Request for a Collection Due Process Hearing (petitioner's Form 12153), and requested a hearing with respondent's Appeals Office (Appeals Office). In that form, petitioner's authorized representative indicated disagreement with the notice of tax lien[3] and stated: "The tax payer [sic] believes he should be given the opportunity to work out a fair payment plan or settlement as he is unable to pay said taxes in full."

On March 1, 2005, a settlement officer with the Appeals Office (settlement officer) sent a letter (settlement officer's March 1, 2005 letter) to petitioner with respect to petitioner's Form 12153. In that letter, the settlement officer stated in pertinent part:

---

[3]In petitioner's Form 12153, petitioner's authorized representative indicated disagreement with not only the notice of tax lien that respondent issued to petitioner but also a notice of intent to levy and your right to a hearing (notice of intent to levy) that respondent issued to petitioner. In this connection, the record indicates that on Aug. 2, 2004, respondent issued a notice of intent to levy with respect to petitioner's taxable year 2001. Petitioner's authorized representative did not mail Form 12153 with respect to that notice of intent to levy until Nov. 2, 2004, which was more than 30 days after the date on which respondent issued that notice. As discussed below, the notice of determination concerning collection action(s) under section 6320 and/or 6330 (notice of determination) addresses only the notice of tax lien and makes no determination with respect to the notice of intent to levy issued with respect to petitioner's taxable year 2001.

I have scheduled a telephone conference on April 14, 2005 at 1:00 PM.  I will call your representative at * * * the number you indicated on your CDP request.  If this time is not convenient, the phone number has changed, or you prefer a face-to-face conference or a hearing by correspondence, please let me know within fourteen (14) days.

  *  *  *  *  *  *  *

During the hearing, I must consider:

- Whether the IRS met all the requirements of any applicable law or administrative procedure.

- Relevant issues you wish to discuss.  These can include:

  1.  Collection alternatives to the lien.  These could include full payment of the liability, or, if you qualify: installment agreement, offer in compromise or temporary delay of collection action,

  2.  Challenges to the appropriateness of collection action.  For example, bankruptcy may impact appropriateness.  We will determine if the Notice of Federal Tax Lien filing was appropriate, and whether you qualify for a lien withdrawal or other lien option.

  3.  Spousal defenses.

  4.  Whether you owe the tax, but only if you have not otherwise had an opportunity to dispute it with Appeals.

- The balance between the need for efficient tax collection and your legitimate concern that the collection action be no more intrusive than necessary.

  *  *  *  *  *  *  *

Our records indicate that you may have some business tax returns that you are required to file.  No Forms 941 have been filed for 2002, although you did file Form 940 for that year reporting wages.  In 2003, you filed Forms 941 for only the first and second quarters, and did not file Form 940 for the year.  Neither were any further Forms 941 filed for the third quarter of 2003 or any quarters thereafter.

**Before alternatives to the Federal Tax Lien may be considered, except for full payment, you must be in full compliance with all filing and payment require-ments, including any business returns for which you are liable.**

**Accordingly, you must file all delinquent tax returns and bring all delinquent payments up to date, including any required Estimated Income Tax Payments.  Additional time will not be extended to file delinquent returns or make delinquent payments, so that collection alterna-tives may be considered.**

Assuming that you will be in full compliance, I enclose a Collection Information Statement that you should complete and return to my office, if you are unable to pay the amount due in full.  This information will be used to determine how the tax can be paid, and to consider alternatives to the proposed lien and levy. Please note supporting documentation requested in each section.

Please send me the items above within fourteen (14) days from the date of this letter.  I cannot consider collection alternatives in your hearing without the information requested above.  [Reproduced literally.]

On March 16, 2005, the settlement officer sent petitioner a letter rescheduling the telephonic conference from April 14 to May 3, 2005.

On March 16, 2005, petitioner's authorized representative sent a letter to the settlement officer (petitioner's March 16,

2005 letter).  Petitioner's authorized representative enclosed with that letter (1) completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals (Form 433-A), dated March 15, 2005 (petitioner's March 15, 2005 Form 433-A); (2) a copy of completed Form 433-A dated September 16, 2003, that petitioner had previously sent to respondent; (3) completed Form 940, Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940), for his taxable year 2003; and (4) copies of (a) an exchange of correspondence during the summer of 2003 that included letters between petitioner's authorized representative and a revenue officer with respondent's collection division and (b) petitioner's completed Form 656, Offer in Compromise (offer-in-compromise), dated September 16, 2003, that petitioner had previously sent to respondent.

Petitioner's March 15, 2005 Form 433-A contained several sections identified as sections 1 through 9.  In section 5 of that form, petitioner indicated that he maintained a checking account that had a balance of $350.  In sections 5 and 6 of petitioner's March 15, 2005 Form 433-A, petitioner provided the responses indicated to the following questions:

    16.   LIFE INSURANCE.  Do you have life insurance with a cash value?  ☒ No  ☐ Yes

       *     *     *     *     *     *     *

    17a. Are there any garnishments against your wages?
        ☒ No  ☐ Yes

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

17b. Are there any judgments against you? ☐ No ☒ Yes

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

17e. In the past 10 years did you transfer any assets out of your name for less than their actual value? ☒ No ☐ Yes

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

17f. Do you anticipate any increase in household income in the next two years? ☒ No ☐ Yes

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

17g. Are you a beneficiary of a trust or estate? ☒ No ☐ Yes

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

17h. Are you a participant in a profit sharing plan? ☒ No ☐ Yes

In section 7 of petitioner's March 15, 2005 Form 433-A, petitioner indicated that he owned (1) a 1991 Cadillac valued at $1,500, (2) "Furniture/Personal Effects" valued at $1,000, (3) inventory valued at $15,000 with respect to which there was an $8,000 outstanding loan balance, and (4)(a) a one-half interest in a duplex on University Avenue in Dubuque (University Avenue property) valued at $40,000 and (b) a one-half interest in a duplex on Wilson Street in Dubuque (Wilson Street property) valued at $40,000. (We shall refer collectively to the University Avenue property and the Wilson Street property as the real properties.) According to petitioner's March 15, 2005 Form 433-A, petitioner had borrowed $50,000 from his brother with respect

to one of the real properties.

In section 8 of petitioner's March 15, 2005 Form 433-A, petitioner indicated that he owned various accounts and/or notes receivable with a total amount due of $3,000.

In section 9 of petitioner's March 15, 2005 Form 433-A, petitioner listed various income items and various living expense items. With respect to the income items listed in that section, petitioner indicated that he had total monthly income of $1,010 consisting of $500 of monthly net income from business and $510 of monthly net rental income. With respect to the expense items listed in section 9 of petitioner's March 15, 2005 Form 433-A, petitioner indicated that he had total monthly living expenses of $1,128 consisting of $393 of monthly expenses for food, clothing, housekeeping supplies, and personal care products, $400 of monthly expenses for housing and utilities, $200 of monthly expenses for transportation, $35 of monthly expenses for taxes, and $100 of other unidentified monthly expenses.

On March 21, 2005, in response to petitioner's March 16, 2005 letter, the settlement officer sent a letter to petitioner's authorized representative (settlement officer's March 21, 2005 letter). In that letter, the settlement officer stated in pertinent part:

> In response to your March 16, 2005 letter, this will advise you that I received and processed Form 940 and the related remittance for American Office Equipment [petitioner's business]. However, our records indicate

that Mr. Mootz still has a Form 941 filing requirement
for some portion of calendar year 2002, since the Form
940 that he filed for that year reports $5,460.00 in
taxable wages for unemployment purposes.  Also, your
letter to Revenue Officer * * * dated April 1, 2003
confirms that wages were paid to an employee named
* * * that were not reported on Forms 941 or W-3.

Accordingly, Mr. Mootz has to file Form(s) 941 that
reflect the wages he actually paid in 2002, whether
more or less than the amount set forth above.  I am
sure you are aware that wages of part time employees
are fully taxable for federal purposes.

I have determined that Mr. Mootz actually submitted two
offers, one on June 19, 2003, and a second on September
22, 2003.  Records indicate that both were returned
shortly after submission due to lack of filing compli-
ance, and/or failure to maintain currency on business
filings and payment for two consecutive quarters prior
to the quarter in which the offer was submitted.
Hence, there is no offer currently pending.  Until Mr.
Mootz becomes fully compliant with all filing and
payment requirements, he is not eligible to have an
offer considered.

In that regard, please advise whether or not Mr. Mootz
is required to make Estimated Income Tax Payments for
2005 based on his current income, and provide a copy of
his 2004 Form 1040.  Please submit this information no
later than five days before our conference that I had
to reschedule to May 3, 2005.  [Reproduced literally.]

On April 11, 2005, in response to the settlement officer's
March 21, 2005 letter, petitioner's authorized representative
sent to the settlement officer (1) a copy of petitioner's income
tax return for his taxable year 2004; (2) Form 941, Employer's
Quarterly Federal Tax Return, for each quarter of taxable year
2002; and (3) information relating to petitioner's estimated tax
payments for his taxable year 2005.

On May 3, 2005, the settlement officer held a telephonic conference with petitioner's authorized representative (May 3, 2005 conference). During that conference, the settlement officer asked petitioner's authorized representative questions about some of the answers in petitioner's March 15, 2005 Form 433-A, including whether the $40,000 value shown for each of the real properties represented petitioner's one-half interest in each such property and the purpose for which petitioner had borrowed $50,000 from his brother. The only question that petitioner's authorized representative was able to answer was with respect to the $40,000 value shown in petitioner's March 15, 2005 Form 433-A. In response to that question, petitioner's authorized representative informed the settlement officer that he believed that the $40,000 shown in that form represented the value of petitioner's one-half interest in each of the real properties. Petitioner's authorized representative told the settlement officer that he would obtain from petitioner answers to the remaining questions that the settlement officer asked. Petitioner's authorized representative also informed the settlement officer during the May 3, 2005 conference that he was aware of one pending judgment against petitioner,[4] that petitioner had received $100,000 from his mother to pay personal living ex-

---

[4]As discussed below, petitioner's authorized representative later advised the settlement officer that the pending judgment was in the amount of $12,000.

penses, and that petitioner did not have any borrowing potential.

During the May 3, 2005 conference, the settlement officer and petitioner's authorized representative also discussed collection alternatives. The settlement officer indicated that it did not appear that petitioner had sufficient income to fund an installment agreement and that an offer-in-compromise might be the best alternative. Petitioner's authorized representative informed the settlement officer that petitioner intended to ask his mother for a loan in order to fund any offer-in-compromise, but that he was uncertain whether petitioner's mother would be willing to do so. Petitioner's authorized representative agreed to contact the settlement officer by no later than May 20, 2005, as to whether petitioner intended to submit an offer-in-compromise.

On May 5, 2005, petitioner's authorized representative sent a letter to the settlement officer (May 5, 2005 letter). In that letter, petitioner's authorized representative stated in pertinent part:

> I had a long talk with Mr. Mootz today. * * *
>
> Enclosed are copies of the signed four (4) 941s for 2002. He indicates he filed them, without payment, in late April.
>
>     *      *      *      *      *      *      *
>
> As to judgments, there is a 2001/2002 Discover Card judgment in Dubuque County Small Claims Court of about $6,000.00 and a 2000 judgment by Tri-State Adjustment for about $250.00. He also is currently being sued for

about $12,000.00 by Asset Acceptance Corp in Dubuque County District Court.  The matter is pending.

As to the two rental units on University Avenue and Wilson Street, he owns a one half (½) interest with his brother, Michael.  Michael has over $100,000.00 coming for his investment in the purchases and improvements. However, there is no note and mortgage.  While there hasn't been a recent appraisal of the properties, it appears Mr. Mootz's one half interest could be $50,000.00 or so for each.  If the two properties were sold for a total of $200,000.00, it appears Michael could be entitled to the full purchases price.

Mr. Mootz indicates he owes his mother about $120,000.00.  There is no note or mortgage.  Mr. Mootz has four brothers and it is highly unlikely he would inherit anything from his mother.

Mr. Mootz indicates that he has not had any employees since the period he reported having an employee.

Mr. Mootz had originally made a lump sum offer to the IRS of $10,000.00.  He intended to borrow said sum from a relative as he would be unable to borrow money from conventional sources.  After he made the offer I.R.S. apparently received $2,000.00 for the State of Iowa, forfeiting his $2,000.00 state sales tax bond.  He should be given credit for said sum on his offer of compromise.  [Reproduced literally.]

On June 17, 2005, the settlement officer reviewed the information that petitioner's authorized representative submitted in his May 5, 2005 letter.  After that review, the settlement officer made the following pertinent entries in his "Case Activity Records":

R/E equity is estimated at $50K apiece in ea of rental properties, altho POA says that TP owes substantial sums to both brother and mother, neither of whom have notes or mortgages to secure their debts.  Thus, TP legally has about $100K equity in these properties, so an offer is out of the question. * * * Liens are filed on basically all IMF and BMF accounts at this time, so

would precede any subsequent judgments, and may be
ahead of those already on file * * * [Reproduced liter-
ally.]

The settlement officer also concluded that petitioner did not
have sufficient income to fund an installment agreement.

On June 20, 2005, in response to the settlement officer's
requests in the settlement officer's March 21, 2005 letter,
petitioner's authorized representative mailed to the settlement
officer copies of (1) petitioner's check in payment of estimated
tax due on April 15, 2005, and Form 1040-ES, Payment Voucher 1,
for petitioner's taxable year 2005 and (2) a bill from the
Internal Revenue Service (IRS) that appears to relate to peti-
tioner's Federal tax liability for 2004 and a check signed by
petitioner in payment of that bill.

On June 22, 2005, the settlement officer held a telephonic
conference with petitioner's authorized representative (June 22,
2005 conference).  During that conference, petitioner's autho-
rized representative agreed that petitioner was unable to fund an
installment agreement.  The settlement officer indicated that an
offer-in-compromise would probably not be accepted because of
petitioner's equity in the real properties.  Nonetheless, peti-
tioner's authorized representative indicated that petitioner
still wished to submit an offer-in-compromise.

On June 22, 2005, the settlement officer sent to peti-
tioner's authorized representative the materials needed for

petitioner to submit an offer-in-compromise and requested that petitioner return any such offer directly to the settlement officer by no later than July 6, 2005.

On June 29, 2005, petitioner's authorized representative sent a letter to the settlement officer (June 29, 2005 letter). In that letter, petitioner's authorized representative stated in pertinent part:

> Enclosed is Mr. Mootz's signed Offer In Compromise and Mr. Mootz's check for $150.00 for the processing fee. Since Wayne originally attempted to settle this matter in 2003, he has made substantial payments to the I.R.S.
>
> As to Wayne's interest in the two parcels of real estate, it should be noted he only owns a one half (½) interest. Arguably, the value of an undivided one half (½) interest to a third party would be limited at best. While his brother owns the other one half interest, Wayne also owes him a substantial sum for expenses, etc. paid by his brother in connection with the real estate. While this sum has not been quantified by a note and/or mortgage Wayne contends it is a legal obligation. [Reproduced literally.]

Petitioner's authorized representative submitted with his June 29, 2005 letter petitioner's offer-in-compromise dated June 28, 2005 (petitioner's June 28, 2005 offer-in-compromise).[5] In item 5 of petitioner's June 28, 2005 offer-in-compromise, petitioner provided the responses indicated to the following questions:

---

[5]The copy of petitioner's June 28, 2005 offer-in-compromise that is in the record does not appear to be complete. Item 8 appears to be missing.

**Item 5 — To:  Commissioner of Internal Revenue Service**

I/We * * * submit this offer to compromise the tax liabilities plus any interest, penalties, additions to tax, and additional amounts required by law (tax liability) for the tax type and period marked below: * * *

☒ **1040/1120 Income Tax** — Year(s) <u>2000 to 2002, inclusive</u>

☒ **941 Employer's Quarterly Federal Tax Return** — Quarterly period(s) <u>1998 to 2001, inclusive</u>

☒ **940 Employer's Annual Federal Unemployment (FUTA) Tax Return** — Year(s) <u>1998 to 2001, inclusive</u>[6]

In items 6 and 7 of petitioner's June 28, 2005 offer-in-compromise, petitioner provided the responses indicated to the following questions:

**Item 6 — I/We submit this offer for the reason(s) checked below:**

☐ **Doubt as to Liability** — "I do not believe I owe this tax."  You must include a detailed explanation of the reason(s) why you believe you do not owe the tax in Item 9.

☒ **Doubt as to Collectibility** — "I have insufficient assets and income to pay the full amount."  You must include a complete Collection Information Statement, Form 433-A and/or Form 433-B.

---

[6]In item 5 of petitioner's June 28, 2005 offer-in-compromise, petitioner offered to compromise his respective Federal tax liabilities for certain taxable years that the settlement officer did not show as petitioner's liabilities in his "Rejection or Withdrawal Memorandum" discussed <u>infra</u> note 7. In addition, as also discussed <u>infra</u> note 7, in his "Rejection or Withdrawal Memorandum", the settlement officer showed as petitioner's liabilities his respective Federal tax liabilities for certain taxable years that petitioner did not offer to compromise in item 5 of petitioner's June 28, 2005 offer-in-compromise.

- 17 -

□ **Effective Tax Administration** — "I owe this amount and have sufficient assets to pay the full amount, but due to my exceptional circumstances, requiring full payment would cause an economic hardship or would be unfair and inequitable." You must in-clude a complete Collection Information Statement, Form 433-A and/or Form 433B **and** complete Item 9.

---

**Item 7**

I/We offer to pay $ <u>10,000.00</u> (must be more than zero). Complete item 10 to explain where you will obtain the funds to make this offer.

Check **only** one of the following:

□ **Cash Offer (Offered amount will be paid in 90 days or less.)**

    *    *    *    *    *    *    *

□ **Short-Term Deferred Payment Offer (Offered amount paid in MORE than 90 days but within 24 months from written notice of acceptance of the offer.)**

    *    *    *    *    *    *    *

□ **Deferred Payment Offer (Offered amount will be paid over the remaining life of the collection statute.)**

$<u>3,000.00</u> within <u>90</u> days * * * from written notice of acceptance of the offer; and

beginning in the first month after written notice of acceptance of the offer $<u>200.00</u> on the <u>4th</u> day of each month for a total of <u>35</u> months.

In items 9 and 10 of petitioner's June 28, 2005 offer-in-compro-mise, petitioner provided the responses indicated to the follow-ing questions:

**Item 9 —** Explanation of Circumstances

I am requesting an offer in compromise for the rea-
son(s) listed below:

**Note:** **If you are requesting compromise based on
doubt as to liability, explain why you
don't believe you owe the tax.  If you be-
lieve you have special circumstances af-
fecting your ability to fully pay the
amount due, explain your situation.  You
may attach additional sheets if necessary.**

I am financially unable to make payments.  See my
financial information provided to I.R.S.

---

**Item 10 —** Source of Funds

I/we shall obtain the funds to make this offer from
the following source(s):

Loan from relatives

On August 22, 2005, the settlement officer sent a letter to

petitioner.  In that letter, the settlement officer stated in

pertinent part:

> I have forwarded your Offer in Compromise to an offer
> examiner for investigation.  You may be contacted in
> the near future concerning any additional information
> necessary to evaluate your offer.
>
> When the completed investigation is returned to my
> office, I will advise you as to the examiner's recom-
> mendation, and schedule a conference if appropriate to
> discuss the findings.  If your offer cannot be recom-
> mended for acceptance, we will discuss other alterna-
> tives to the proposed lien or levy.  [Reproduced liter-
> ally.]

On March 17, 2006, the settlement officer sent a letter to

petitioner.  In that letter, the settlement officer stated in

pertinent part:

> I have received the results of investigation of your Offer in Compromise.  The examiner's recommendation was that the offer should not be accepted because Net Realizable Equity in assets is substantially greater than the amount you offered as set forth below:

**ASSET/EQUITY TABLE**

| | |
|---|---|
| OFFER DEPOSIT | -0- |
| CASH/BK ACCTS | 100 |
| LIFE INS | -0- |
| PENS/IRA/401(k) | -0- |
| REAL PROP (2) | 85,400 |
| PERS PROP | -0- |
| TOOLS/EQUP | -0- |
| 1991 CADILLAC | 1,000 |
| 1993 GMC | 2,000 |
| BUS INVENTORY | 29,608 |
| ACCTS REC | 3,500 |
| TOTAL | 121,608 |

> If you wish to appeal the examiner's findings, please submit information no later than **March 31, 2006** to show the areas of disagreement and I will schedule a conference to discuss the examiner's findings and any additional information you submit.

> If the offer cannot be recommended for acceptance, we will discuss other collection alternatives.  [Reproduced literally.]

On March 29, 2006, petitioner sent a letter to the settlement officer (petitioner's March 29, 2006 letter).  In that letter, petitioner stated in pertinent part:

> I have worked with you and your people for the past four years.  In that time you have levied against me and taken about $3,000 dollars.  Also I have paid over $3,000 dollars in legal fees.  From the very start your

people told me we could work out a reasonable compro-
mise.  Now you refuse my offer. * * *

    *        *        *        *        *        *        *

The property you have listed was paid for solely by my
brother.

My inventory is very dated * * *

In view of these events , I do not feel I was treated
fairly.  [Reproduced literally.]

Petitioner did not provide any documents or other information
corroborating the contentions advanced in petitioner's March 29,
2006 letter that petitioner's brother paid for the real proper-
ties and that petitioner's inventory was "very dated".

On March 30, 2006, the settlement officer telephoned (March
30, 2006 telephone call) petitioner's authorized representative
and informed him (1) that petitioner's June 28, 2005 offer-in-
compromise of $10,000 was not adequate and would not be accepted
to resolve the various Federal tax liabilities of petitioner for
various taxable years, including petitioner's unpaid 2001 income
tax liability and petitioner's unpaid 2002 income tax liability,[7]

---

[7]The "Rejection or Withdrawal Memorandum" dated Mar. 30,
2006, that the settlement officer prepared with respect to
petitioner's June 28, 2005 offer-in-compromise showed that
petitioner had total outstanding Federal tax liabilities of
$48,183.10.  The "Appeals Transmittal and Case Memo" dated Apr.
19, 2006, that the settlement officer prepared with respect to
that offer-in-compromise showed that petitioner had total out-
standing Federal tax liabilities of $32,449.  The Court is unable
to reconcile the difference between the respective outstanding
Federal tax liabilities shown in the settlement officer's "Rejec-
tion or Withdrawal Memorandum" and the settlement officer's
(continued...)

(2) that it appeared that the case should be returned to respondent's collection division, and (3) that he would be closing the case.  During the March 30, 2006 telephone call, petitioner's authorized representative told the settlement officer that he had previously advised petitioner that petitioner's June 28, 2005 offer-in-compromise would probably not be accepted, but that petitioner had no other way to discharge his outstanding Federal tax liabilities.

The settlement officer prepared a written recommendation explaining the reasons why he had concluded that petitioner's June 28, 2005 offer-in-compromise was not adequate and would not be accepted to resolve petitioner's Federal tax liabilities, including petitioner's unpaid 2001 income tax liability and

---

[7](...continued)
"Appeals Transmittal and Case Memo".

As discussed supra note 6, in item 5 of petitioner's June 28, 2005 offer-in-compromise, petitioner offered to compromise his respective Federal tax liabilities for certain taxable years that the settlement officer did not show as petitioner's liabilities in his "Rejection or Withdrawal Memorandum".  As also discussed supra note 6, in his "Rejection or Withdrawal Memorandum", the settlement officer showed as petitioner's liabilities his respective Federal tax liabilities for certain taxable years that petitioner did not offer to compromise in item 5 of petitioner's June 28, 2005 offer-in-compromise.  We presume that, in filing petitioner's June 28, 2005 offer-in-compromise, petitioner was unaware of those other Federal tax liabilities and that the settlement officer concluded that they should have been included in petitioner's June 28, 2005 offer-in-compromise.  See Internal Revenue Manual (IRM) 5.8.2.3.1(2) ("A taxpayer may submit an offer that does not include all outstanding liabilities.  Prior to accepting the offer, the Form 656 must be amended to include all outstanding tax liabilities.").

petitioner's unpaid 2002 income tax liability.  In that recommen-

dation, the settlement officer stated in pertinent part:

### SUMMARY AND RECOMMENDATION

The taxpayer sought to compromise, under authority of IRC 7122, individual income and employment taxes shown on the attachment for the sum of $10,000.00, with $3,000.00 to be paid within ninety days of notice of acceptance, and $200.00 per month for a term of 35 months.  This, the taxpayer's first offer, submitted in connection with his Collection Due Process case, was based solely on the basis of collectibility; effective tax administration or doubt as to liability was not an issue.

I recommend that the offer be rejected, since a greater amount than the amount offered appears to be collectible.

### BACKGROUND

Mr. Mootz (59), an unmarried person, has been self employed in office supply business for many years, with employment tax deficiencies going back to 1997.  He has an unremarkable record of compliance with filing and payment of employment taxes, which comprise the bulk of the taxes at issue.  He allegedly has had no employees since mid-2003.

There are no minor children in the home, and no health issues that would support an Effective Tax Administration approach.  He lives in a home that he owns with his brother, each having a 50% interest.  They also own another parcel with the same manner of ownership. Although Mr. Mootz alleges that his brother loaned him the funds to obtain the 50% ownership interests, no mortgages of record exist to memorialize any such arrangement, so filed Notices of Federal Tax Lien enjoy priority over the alleged unsecured debt and secure the government's interest in both properties.

### DISCUSSION AND ANALYSIS

The examiner determined that the taxpayer had ability to pay $132,828, with Net Realizable Equity of $121,608 coming from $85,400 equity in real properties, along

with business inventory, accounts receivable, vehicles and cash on hand. Future income value was set at $11,220.00.

The taxpayer was given opportunity to protest the examiner's findings, but provided no additional information to support reduction in the values assigned.

      \*       \*       \*       \*       \*       \*       \*

The examiner determined future income value based on an excess of $110.00/month, but failed to make contingent allowances for health care or life insurance, both of which should have been factored into necessary living expenses. Since it was anticipated that the cost of these items would exceed the $110.00 projected excess per month, future income value was eliminated as unrealistic for the taxpayer's situation. \* \* \*

The examiner's findings were shared and discussed with the taxpayer's representative, who advised that he had related to the taxpayer that the offer would not be acceptable due to his equity position in real property. Based on the taxpayer's lack of a meaningful response to these findings, I anticipate that he would be disinclined to withdraw the offer.

#### CONCLUSION

I recommend that the proposed rejection be sustained. [Reproduced literally.]

On April 17, 2006, respondent issued to petitioner a notice of determination with respect to petitioner's unpaid 2001 income tax liability and petitioner's unpaid 2002 income tax liability. That notice stated in pertinent part:

**Summary of Determination**

You submitted a timely Collection Due Process Hearing and a conference was held to discuss alternatives to the filed Notice of Federal Tax Lien. As a result of that conference, you submitted an Offer-in-Compromise, which was investigated, but could not be recommended for acceptance because you demonstrated ability to pay

the balance due in full from equity in assets.[8]

> Since the offer could not be recommended for accep-
> tance, and you did not propose any other means to
> protect the government's interest, the lien cannot be
> released.  Your case will be returned to Collection for
> whatever actions they deem appropriate to collect the
> tax, unless you exercise you right to judicial review
> of our determination.  [Reproduced literally.]

An attachment to the notice of determination stated in pertinent

part:

### BRIEF BACKGROUND

> Notice of filing of the Notice of Federal Tax Lien was
> sent October 8, 2004, while your Collection Due Process
> Hearing request was received November 8, 2004, within
> the thirty-day timeframe set forth in Internal Revenue
> Code Section 6320 for a timely hearing request.

> A Collection Due Process Hearing was scheduled for
> April 14, 2005 by letter dated March 1, 2005.  The
> letter advised you that you had to be up to date with
> depositing, filing and paying all income taxes before
> collection alternatives could be considered.  It also
> requested that you submit a Collection Information
> Statement to assist in determining the proper course of
> action.

> Due to scheduling conflicts, the conference was re-
> scheduled to May 3, 2005.  Following the conference,
> after you filed all delinquent returns and brought
> required payments up to date, you submitted an Offer-
> in-Compromise for consideration.

---

[8]Although the notice of determination related only to peti-
tioner's unpaid 2001 income tax liability and petitioner's unpaid
2002 income tax liability, in making the determination to reject
petitioner's June 28, 2005 offer-in-compromise, that notice took
into account not only petitioner's unpaid 2001 income tax liabil-
ity and petitioner's unpaid 2002 income tax liability but also
other outstanding Federal tax liabilities of petitioner for his
taxable years 2001 and 2002 and certain other taxable years.  See
supra notes 6 and 7.

The offer was investigated, but found not to be accept-
able, since you have sufficient equity in real property
and other assets to pay the amount due in full.  You
and your representative were advised of the findings
and given opportunity to provide additional information
concerning the value of the assets, but did not do so.
Therefore, your offer cannot be recommended for accep-
tance.  No other collection alternatives were proposed
to resolve your tax obligations or secure the govern-
ment's interest in lieu of the Notice of Federal Tax
Lien.

## DISCUSSION AND ANALYSIS

Transcripts and the case history verify that:

1) the taxes at issue were assessed in accor-
dance with IRC Section 6201, and that notice
and demand for payment was mailed to your
last known address timely in accordance with
IRC Section 6303.

2) there were balances due when the Collection
Due Process notice was issued, as required by
IRC Section 6322 and 6331(a), and that a levy
source had been identified.

3) IRC 6320(a)(2) requires that taxpayers be
notified of filing of a Notice of Federal Tax
Lien within five days of the date it is
filed.  The record shows that this notice was
issued timely in accordance with the law.

4) Collection Due Process Notice was sent by
certified mail, return receipt requested, to
your last known address, which is the same as
that on your request for hearing.

5) The Automated Collection staff attempted to
resolve your case, but was unable to do so.
Therefore, your file was forwarded to Appeals
promptly upon receipt of your hearing re-
quest.

6) internal account transaction codes were en-
tered to place your accounts in suspended
status pending the outcome of the due process
hearing.

7)   The Settlement Officer in your case has had no prior involvement with you concerning the tax periods at issue in this due process hearing, pursuant to requirements of Internal Revenue Code Section 6330.

<u>ISSUES RAISED BY THE TAXPAYER</u>

**1) that you should be given opportunity to work out a fair payment plan or settlement, since you were unable to pay the taxes in full.**

<u>Finding</u>: Collection alternatives were considered, including an Installment Agreement and an Offer-in-Compromise.  Your current limited income does not allow you to fund an acceptable Installment Agreement.  Your Offer-in-Compromise could not be accepted because you have more equity in assets than the amount of the tax due.

**2) No other substantive issues were raised.**

<u>BALANCING THE NEED FOR EFFECTIVE COLLECTION OF THE TAX WITH LEGITIMATE TAXPAYER CONCERN THAT COLLECTION AC-TIONS BE NO MORE INTRUSIVE THAN NECESSARY</u>

Filing of the Notice of Federal Tax Lien was clearly intrusive, and has far-reaching adverse financial consequences, since it puts other creditors on notice of your federal tax debt, and creates difficulties with borrowing funds that may be necessary to provide for basic health and welfare of the family, or production of income.

Therefore, it is the policy of the Internal Revenue Service to provide taxpayers ample opportunity to resolve their tax matters before a Notice of Federal Tax Lien is filed, although a lien may be filed at any time it is deemed necessary to protect the government's interest.

The case file reveals that Internal Revenue Service had multiple personal contacts with you concerning your delinquent taxes, but that such efforts did not result in a mutually agreeable resolution to your tax problem.  Therefore, lien filing was deemed necessary.

**Appeals has determined that filing of the Notice of Federal Tax Lien was appropriate in your case, considering that you were not able to offer other means to protect the government's interest in your assets. Therefore, lien filing is considered to be the most efficient method to facilitate collection of the tax.**
[Reproduced literally.]

The notice of determination made no determination with respect to the notice of intent to levy issued with respect to petitioner's taxable year 2001. See <u>supra</u> note 3. In petitioner's amended petition, petitioner alleged: "I would like to work out a payment plan. I cannot raise enough capital to cover the entire amount. I have worked with you and need a reasonable settlement!"

<u>Discussion</u>

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(b); <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). We conclude that there are no genuine issues of material fact regarding the questions raised in respondent's motion.

Petitioner does not dispute the existence or the amount of petitioner's unpaid 2001 income tax liability or petitioner's unpaid 2002 income tax liability in the pleadings that he filed in this case or in his response to respondent's motion. Although not altogether clear, petitioner appears to argue that respondent abused respondent's discretion in determining in the notice of

determination to reject petitioner's June 28, 2005 offer-in-compromise.[9]  As discussed above, in that offer-in-compromise, petitioner offered $10,000 to compromise Federal tax liabilities totaling between $32,449 and $48,183.10.  See supra note 7.

Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the determination of the Commissioner of Internal Revenue for abuse of discretion.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

Section 7122(a) authorizes the Secretary of the Treasury (Secretary) to compromise, inter alia, any civil case arising under the internal revenue laws.  Section 7122(c) authorizes the Secretary to prescribe guidelines for the officers and the employees of the IRS to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute.  The regulations promulgated under section 7122 set forth three grounds for the compromise of a liability:  (1) Doubt as to liability, (2) doubt as to collectibility, and (3) to promote effective tax administration.  Sec. 301.7122-1(b), Proced. & Admin. Regs.  The only ground that petitioner raised in petitioner's June 28, 2005 offer-in-compromise was doubt as to collectibility.

---

[9]As discussed above, during the June 22, 2005 conference, petitioner's authorized representative acknowledged that petitioner was unable to fund an installment agreement.

Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the taxpayer's assessed liability.  Sec. 301.7122-1(b)(2), Proced. & Admin. Regs.  Respondent has prescribed procedures that are to be used to determine doubt as to collectibility in the regulations promulgated under section 7122, the IRM, and Rev. Proc. 2003-71, 2003-2 C.B. 517 (Revenue Procedure 2003-71).

Section 301.7122-1(c)(2)(i), Proced. & Admin. Regs., provides:

> (i) <u>Allowable Expenses</u>.--A determination of doubt as to collectibility will include a determination of ability to pay.  In determining ability to pay, the Secretary will permit taxpayers to retain sufficient funds to pay basic living expenses.  The determination of the amount of such basic living expenses will be founded upon an evaluation of the individual facts and circumstances presented by the taxpayer's case. * * *

Part 5.8.1.1.3 of the IRM provides:

> **5.8.1.1.3 Policy (09-01-2005)**
>
> (1) Policy Statement P-5-100 states:

> The Service will accept an offer in compromise when it is unlikely that the tax liability can be collected in full and the amount offered reasonably reflects collection potential.  An offer in compromise is a legitimate alternative to declaring a case currently not collectible or to a protracted installment agreement.  The goal is to achieve collection of what is potentially collectible at the earliest possible time and at the least cost to the Government.

> In cases where an offer in compromise appears to be a viable solution to a tax delinquency, the Service employee assigned the case will discuss the compromise alternative with the taxpayer and, when necessary, assist in preparing the required forms.  The taxpayer

will be responsible for initiating the first specific proposal for compromise.

The success of the offer in compromise program will be assured only if taxpayers make adequate compromise proposals consistent with their ability to pay and the Service makes prompt and reasonable decisions. Taxpayers are expected to provide reasonable documentation to verify their ability to pay. The ultimate goal is a compromise which is in the best interest of both the taxpayer and the government. Acceptance of an adequate offer will also result in creating for the taxpayer an expectation of a fresh start toward compliance with all future filing and payment requirements.

(2) Offers will not be accepted if it is believed that the liability can be paid in full as a lump sum or through installment payments extending through the remaining statutory period for collection (CSED), unless special circumstances exist. See IRM 5.14, Installment Agreements.

(3) Absent special circumstances, a Doubt as to Collectibility (DATC) offer amount must equal or exceed a taxpayers [sic] reasonable collection potential (RCP) in order to be considered for acceptance. The exception is that if special circumstances[10] exist as de

---

[10]The special circumstances referred to in part 5.8.1.1.3 of the IRM and sec. 4.02(2) of Revenue Procedure 2003-71 (discussed below) are

(1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential of the case or (2) if no demonstration of such suffering can be made, circumstances justifying acceptance of an amount less than the reasonable collection potential of the case based on public policy or equity considerations. IRM pt. 5.8.4.3.4 (Sept. 1, 2005) (Effective Tax Administration and Doubt as to Collectibility with Special Circumstances). To demonstrate that compelling public policy or equity considerations justify a compromise, the taxpayer must be able to demonstrate that, due to exceptional circumstances, collection of the full liability would under-

(continued...)

fined in IRM 5.8.4.3, Effective Tax Administration and
Doubt as to Collectibility with Special Circumstance,
or IRM 5.8.11, Effective Tax Administration, the offer
may be accepted on the basis of hardship or Effective
Tax Administration (ETA).

Section 4.02(2) of Revenue Procedure 2003-71 provides in

pertinent part:

An offer to compromise based on doubt as to col-
lectibility generally will be considered acceptable if
it is unlikely that the tax can be collected in full
and the offer reasonably reflects the amount the Ser-
vice could collect through other means, including
administrative and judicial collection remedies. See
Policy Statement P-5-100. This amount is the reason-
able collection potential of a case. In determining
the reasonable collection potential of a case, the
Service will take into account the taxpayer's reason-
able basic living expenses. In some cases, the Service
may accept an offer of less than the total reasonable
collection potential of a case if there are special
circumstances.

On the record before us, we find that the settlement officer

followed all of the guidelines that respondent has prescribed to

determine whether an offer-in-compromise is adequate and should

be accepted to resolve a dispute. In the settlement officer's

March 1, 2005 letter, the settlement officer suggested to peti-

tioner the possibility of an offer-in-compromise and outlined the

filing and payment requirements that petitioner would be required

----

[10](...continued)
mine public confidence that the tax laws are being
administered in a fair and equitable manner. Sec.
301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

Murphy v. Commissioner, 125 T.C. 301, 309 (2005), affd. 469 F.3d
27 (1st Cir. 2006); see also IRM 5.8.11 (Effective Tax Adminis-
tration).

to meet before that or any other collection alternative could be considered.  During the May 3, 2005 conference, the settlement officer and petitioner's authorized representative discussed collection alternatives, including the possibility of an offer-in-compromise.

Upon receiving petitioner's June 28, 2005 offer-in-compromise, the settlement officer forwarded it to an offer examiner for investigation.  The settlement officer gave petitioner the opportunity to respond to the recommendation of the offer examiner and reviewed petitioner's response to that recommendation. While petitioner advanced certain contentions in petitioner's March 29, 2006 letter,[11] petitioner did not provide any documents or other information corroborating those contentions.  The settlement officer concluded that petitioner's June 28, 2005 offer-in-compromise of $10,000 should be rejected because petitioner had demonstrated ability to pay in full from his equity in assets his Federal tax liabilities totaling between $32,449 and $48,183.10.[12]  See supra note 7.

---

[11]As discussed above, the contentions that petitioner advanced in petitioner's March 29, 2006 letter were that petitioner's brother paid for the real properties and that petitioner's inventory was "very dated".

[12]As discussed above, petitioner offered $10,000 to compromise not only petitioner's unpaid 2001 income tax liability and petitioner's unpaid 2002 income tax liability but also certain other outstanding Federal tax liabilities.  See supra note 6 and accompanying text and note 7.

Based upon our examination of the entire record before us, we find that respondent did not abuse respondent's discretion in making the determinations in the notice of determination with respect to petitioner's unpaid 2001 income tax liability and petitioner's unpaid 2002 income tax liability. On that record, we sustain those determinations.

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

On the record before us, we shall grant respondent's motion.

To reflect the foregoing,

<u>An order granting respondent's motion and decision for respondent will be entered</u>.